## EDWARD STONE *versus* THE NATIONAL INSURANCE COMPANY.

The stealing of cargo by the mariners (other than petty thefts) is barratry.

A policy of insurance upon the mate's adventure, against barratry of the mariners, covers a loss by the theft of the mariners.

Where the mate took a bill of lading of his outward adventure and received the proceeds in dollars, which he put into his trunk, and usually kept his trunk in the cabin, but while the cabin was painting, in a foreign port, the officers were obliged to sleep and keep their trunks and baggage in the steerage, and the mate's trunk, being placed under the steerage steps, was opened and the dollars stolen by the cook and steward, it was *held*, that no negligence was proved which would discharge the underwriters on the mate's adventure, against barratry of the mariners.

On a case stated it appeared, that this was an action of assumpsit on a policy of insurance, dated March 7th, 1833, by which the defendants insured W. Stott, payable to the plaintiff in case of loss, $ 500 on his adventure on board the brig Nabob, at and from Boston to port or ports of discharge and loading east of the Cape of Good Hope, &c. and thence to her port of discharge in the United States. One of the perils insured against was "barratry of the master (unless the assured be owner of the vessel) and of the mariners." Stott was first mate of the vessel, and his adventure, at the time of the larceny

hereafter mentioned, consisted of $ 384 in specie, which were deposited in his trunk, then under the steerage steps.

At the argument it was conceded, that the dollars were the proceeds of the mate's outward adventure, for which the master signed a bill of lading ; and no distinct bill of lading was made for the dollars.

The second mate would testify, that when the trunk was kept in the cabin, it was always kept locked ; and that Stott was particular in this respect.

On the 16th of September, 1833, the vessel was lying at anchor off Whampoa, for the purpose of disposing of her cargo, and on the afternoon of that day Stott's trunk was opened and the money stolen by the cook and steward of the vessel, who immediately deserted. The theft was not discovered until the next morning. They were subsequently arrested, but no part of the money was recovered. At the time of the theft the cabin was painting, by reason of which the officers slept in the steerage, and were obliged to keep their trunks and baggage there. The steerage steps lead from the cabin to the deck.

If upon this statement the Court should be of opinion that the plaintiff was entitled to recover, judgment was to be rendered for the sum named in the policy, &c. ; otherwise the plaintiff was to become nonsuit.

*C. G. Loring* and *F. C. Loring*, for the plaintiff, cited Weskett, 35 ; *Knight v. Cambridge*, 1 Str. 581 ; 2 Dane's Abr. 118 ; *Taggard v. Loring*, 16 Mass. R. 336 ; Hughes on Ins. 232 ; *Ross v. Hunter*, 4 T. R. 37 ; *Kendrick v. Delafield*, 2 Caines's R. 72.

*Dexter* and *Gardiner*, for the defendants, cited Weskett, 543 ; Roccus, note 40 ; Park (7th ed.) 33 ; Marshall, (3d ed.) 235, 236 ; 1 Phillips on Ins. (1st ed.) 158, 224, 225, 226, 230, 231, 236, 237, 239, 258 ; *Hallet v. Columbian Ins. Co.* 8 Johns. R. 209, ; *Sparrow v. Carruthers*, 2 Str. 1236 ; *Strong v. Natally*, 4 Bos. & Pul. 16 ; *Burgess v. Clements*, 4 Maule & Selw. 306.

PUTNAM J. delivered the opinion of the Court. The underwriters undertake to insure (among other things) against a loss by the barratry of the master (unless the assured be owner

*Stone
v.
National
Ins. Co.*

*March 5th,
1836.*

*March 20th,
1837.*

of the vessel,) and of the mariners ; and the question is, wheth-er the plaintiff *may recover upon the ground that his loss has* been occasioned by the barratry of the mariners.

It is necessary therefore to understand what is meant by barratry in the marine law.

Lord *Ellenborough,* in *Boehm et al.* v. *Combe,* 2 Maule & Selw. 172, said that " the word barratry was large enough to include every species of fraud or *malus dolus,* committed by the wagoner or servants, taking them to stand in place of the master and mariners." That was a policy on goods at and from London by land carriage to Harwich, and from Harwich by packet to Gottenburgh ; and a loss by the fraud and negli-gence of the servants of the carrier was held to come within the policy.

In *Vallejo* v. *Wheeler,* Cowp. 156, *Aston* J., speaking of barratry of the master, says that it " comprehends every spe-cies of fraud, knavery or criminal conduct in the master, by which the owners or freighters are injured." And we think the word is to be understood in as extensive a meaning, when it is applied to the mariners, as it is when applied to the mas-ter of the ship. Mr. Justice *Willes,* in *Lockyer* v. *Offley,* 1 T. R. 259, gives substantially the same definition. It " is *every species of fraud or knavery in the master of the ship by which the freighters or owners are injured.*"

Stealing the cargo by the mariner, must come within the definition of barratry. This is said expressly in Hughes on Insurance, 232, note *d.* "When thefts are committed by the mariner, the underwriters are liable for barratry." But this is not to be understood of petty thefts, for such losses are not covered by the policy. 1 Phil. Ins. 258.

Weskett, *p.* 35, describes barratry as *malversation* or fraud. He cites from Savary, that it consists in stealing, embezzling or in any way altering the merchandises by the master *or com-pany* of the ship, and in general, all tricks, frauds or malprac-tices, which they often use to defraud the *owner of the ship, cargo,* or *others persons* concerned in it. And from the Dic-tionary of Trade and Commerce, Weskett cites this definition of barratry ; it is committed " when the master or the mari-ners cheat the owners or insurers, whether by running away

with the ship, sinking her, or deserting her, or embezzling the cargo."

It can only be committed by the master and mariners by some act contrary to their duty in the relation in which they stand to the owners of the ship. Marshall (1st ed.) 449. Again, *p.* 452, it must be committed against the owner. It is an act of wrong done by the master against the ship and goods ; per Lord *Hardwicke, p.* 453.

These definitions would seem to prove, that the loss of Stott's adventure has been occasioned by the barratry of the mariners. But the defendants contend that Stott was himself a mariner, viz. the mate of the vessel, and that no act of barratry could be committed against him, he not being owner of the ship, nor a freighter, within the meaning of the law. But we think that the plaintiff was acting in two capacities, one as mate of the vessel, and another, as the freighter of goods on board.

It is true, that the terms of the mate's agreement with the owner of the ship do not appear ; nor is it material that they should. If he had agreed to pay in cash for the transportation of his goods, if they had been stolen by the mariners on board the ship, without any neglect on his part, it is not believed that a defence would have been made against the plaintiff's claim for the loss. But the mate was to pay for the transportation, by his services. The privilege was granted to him as part compensation for wages, and his goods were as much under the protection of the policy, as they would have been if he had agreed to pay in money, instead of labor, for the privilege.

Again, it is contended for the defendants, that the owners of the vessel would not be answerable for the loss, and therefore the underwriters are not answerable, inasmuch as there can be no barratry unless the criminal act be prejudicial to the owner of the ship. But that would be a very short and imperfect definition of barratry. It may be committed against the owners of the cargo, as well as against the owners of the ship.

By the marine law, the owners of vessels are bound to provide a good ship and crew to transport the goods of the freighters. Now suppose the freighters agreed to exonerate

4

the owners of the ship from all losses to arise from the criminal acts of the master and mariners.    Such a discharge would not vary or lessen their duty to conduct themselves faithfully in their several relations to the ship and cargo.    It would only subject the freighters to bear such losses ; and such liability would furnish the best reason in the world why they should protect themselves against such loss obtaining an insurance against it.

If the mate might have recovered against the owners under the particular agreement with them, for the loss arising from the fraudulent conduct of the master and mariners, as to the transportation of the mate's goods, there would have been less reason why he should have paid a premium to the defendants to become responsible for such loss.    The mate was the owner of the goods.    They were lawfully in the ship, constituting a part of the cargo.    The mate stood also in the condition of a freighter of the goods, so far at least as his relation to the property concerned the defendants.    And the criminal act of the mariners was against the duty which they owed, as well from their relation to the ship, as to the cargo.

It was contended, that the money was not intrusted to the care of the mariners.    That remark may be true in a limited sense, for the money was not delivered to the mariners to keep, but it is not true in a general sense.    For the whole property was intrusted to the master and mariners ; and it was their duty to navigate the ship, and to take all reasonable care for the preservation of the whole property, and in all respects to conduct themselves with fidelity, as well in regard to the owners of the ship, as of the goods.

But it has been contended for the defendants, that loss has been occasioned by the mate's own negligence.    If that were so, it would furnish a good defence.    But from the facts which are agreed in the case, we do not think that such an inference could be legally drawn.

The dollars were put and kept in the mate's trunk, which was usually kept in the cabin, but which, during the time of painting the cabin, was obliged to be kept with the baggage and trunks of the officers under the steerage steps.    And the

trunk was always kept locked by the mate. It is found that he was particular in that respect.

Now we cannot perceive any negligence on the part of the mate in regard to the manner of keeping and securing the money. If he had left his trunk unlocked, or left it upon the deck, or had put it into the forecastle, it would have been otherwise. But it was placed where the officers put their own baggage and trunks, where it would be very constantly under the observation of the officers.

Upon the whole, it is the opinion of the Court, that judgment shall be rendered for the plaintiff.